## HAM v. PRESTON; et vice versa.

1. The court erred in granting a new trial upon the ground that he had erroneously instructed the jury as to one of the contentions of the defendant.

2. The portion of the charge excepted to in the second ground of the motion for a new trial is not erroneous for any of the reasons assigned.

3. Error is assigned upon the following charge of the court: "It is necessary in this State, gentlemen of the jury, that before a deed can become effective there must be either an actual or constructive delivery of the deed during the lifetime of the grantor, but this does not necessarily mean that it was the 'intention of the grantor that the physical custody or control of the deed should pass into the possession of the grantee, or that it does not reach the possession and control of the grantee until after the death of the grantor. It is a legal delivery if it was intended by the grantor that the deed should be delivered to the grantee during the lifetime of the grantor, and it would not make any difference that the grantee did not obtain physical possession of the deed

Deeds, 18 C. J. p. 196, n. 17; p. 197, n. 21; p. 199, n. 29; p. 210, n. 35, 36, 37; p. 219, n. 60; p. 220, n. 61; p. 221, n. 75.

New Trial, 29 Cyc. p. 788, n. 3.

Trial, 38 Cyc. p. 1707, n. 98; p. 1711, n. 19.

until after the death of the grantor,—the deed would nevertheless be a legal deed." This is a correct charge on the issue with which the court was dealing. The principles and doctrine there stated are sound; they are based upon the decision in the case of *Wellborn* v. *Weaver*, 17 *Ga.* 267 (63 Am. D. 235), in which the law and controlling principles upon this question were carefully considered and elaborately discussed.

4. In view of the ruling made in the preceding headnote, the court did not err in refusing a request to give the following in charge: "I charge you that if Mrs. Ham placed the deeds with Mr. Gibson with absolute, positive instructions to deliver them to Mrs. Preston if anything happened to her, and if she meant that he should deliver them when she died, and if there was no other condition to the duty of Mr. Gibson to deliver them except upon the death of Mrs. Ham, and if Mr. Gibson was holding the deeds under the instructions of Mrs. Ham for no other purpose than to deliver them to Mrs. Preston when Mrs. Ham died, and if Mr. Gibson did send the deeds to Mrs. Preston after Mrs. Ham's death, then I charge you that in law there was a delivery of the deeds to Mrs. Preston, and your verdict should be for the defendant." It follows that other requests to charge, dealing with the same subject, were properly refused.

5. The court's charge upon the subject of the settlement agreement between the parties adequately covered that issue, and it was not error to refuse the request to charge upon that subject.

6. The court was requested to charge as follows: "I charge you that it does not require a high degree of mental capacity to make a deed of gift, or to deliver a deed of gift, or to direct or request the delivery of a deed of gift. Any one who has strength of mind and reason equal to a full and clear understanding of the nature and consequences of his or her acts in doing so is to be considered sane for that purpose and capable in law of doing so." Upon the subject covered by this request the court actually charged in this language: "I charge you that it requires less mental capacity to make a gift than to make a sale. I charge you that it does not require a high degree of mental capacity to make a deed of gift or to deliver a deed of gift. Any one who has strength of mind and reason equal to a full and clear understanding of the nature and consequences of his or her acts in doing so is to be considered sane for that purpose and capable in law of doing so." The charge as given sufficiently and accurately covered the subject.

7. The following requested instruction was submitted to the court: "I charge you that even if Mrs. Ham was a lunatic, if she had lucid intervals—that is, periods during which she was sane and rational, anything she did during such a lucid interval or rational period was the same in effect as the act of any sane person." The request was sufficiently covered by the charge actually given, which was in the following language: "I charge you that mere weakness of mind from sickness or infirmity, not amounting to imbecility, is not enough to warrant a jury in setting aside a transaction, in the absence of proof of fraud or undue influence. I charge you that even if Mrs. Ham was a lunatic, if she had lucid intervals, that is, periods during which she was sane and rational, and comprehended what she was doing, anything

she did during such a lucid interval or rational period was the same in effect as the act of any sane person."

Nos. 5593, 5602. SEPTEMBER 8, 1927.

Equitable petition. Before Judge Persons. Butts superior court. June 23, 1926.

*Joel B. Mallet, C. L. Redman,* and *H. M. Fletcher,* for plaintiff.
*O. M. Duke* and *John R. L. Smith,* for defendant.

BECK, P. J. The pleadings in this case are summarized in the report of *Ham* v. *Preston,* 152 *Ga.* 244 (109 S. E. 505), and the substance of the evidence upon a former trial is set forth in the statement of facts in the case of *Preston* v. *Ham,* 156 *Ga.* 223 (119 S. E. 658). The evidence on the last trial was substantially the same, except upon the question of compromise settlement. The jury returned a verdict in favor of the plaintiff, and it is recited in the bill of exceptions that this is "the third concurrent verdict in favor of the plaintiff in the case." The defendant made a motion for a new trial, which was granted solely upon the assignment of error contained in the first special ground of the motion. To this judgment the plaintiff excepted; and the defendant assigns error upon the judgment refusing a new trial upon the grounds of the motion other than the first.

1. In the first ground of the amendment to the motion for a new trial exception is taken to the following charge of the court: "Mrs. Preston in her contention seeks to establish that there was a delivery of these deeds, either actual or constructive, and that this delivery of the deeds did not come into her possession until after the death of Mrs. Ham, but that they were intended by Mrs. Ham, the maker of the deeds, to be conveyed to her, and that the delivery of the deeds was not limited by the grantor, Mrs. Ham, after the death of Mrs. Ham, but that she had relinquished the possession or control and dominion over these deeds during her lifetime, and that it was intended by Mrs. Ham that she, Mrs. Preston, should go into the custody and possession of these deeds before the death of Mrs. Ham." The defendant contends that the charge quoted was erroneous against her on a material point in the case, and prejudicial and harmful, in that it erroneously stated one of the contentions which she made, and failed to state one of the contentions which she made. It is contended also by her counsel that the defendant did not contend that it was essential to a valid delivery of the deeds that it should have been intended

by Mrs. Ham that defendant should go into possession and custody of these deeds before the death of Mrs. Ham; that on the contrary defendant's counsel argued to the court and to the jury, and requested the court in writing to charge, that it was not necessary that the jury should believe from the evidence that it was intended by Mrs. Ham that defendant should go into the custody and possession of the deeds before the death of Mrs. Ham; the requests to charge being as follows: (a) "I charge you that if Mrs. Ham placed the deeds with Mr. Gibson with absolute, positive instructions to deliver them to Mrs. Preston if anything happened to her, and if she meant that he should deliver them when she died, and if there was no other condition to the duty of Mr. Gibson to deliver them except upon the death of Mrs. Ham, and if Mr. Gibson was holding the deeds under the instructions of Mrs. Ham for no other purpose than to deliver them to Mrs. Preston when Mrs. Ham died, and if Mr. Gibson did send the deeds to Mrs. Preston after Mrs. Ham's death, then I charge you that in law there was a delivery of the deeds to Mrs. Preston, and your verdict should be for the defendant." (b) "I charge you that if while the deeds were in the possession of Mr. Gibson, and while Mrs. Ham was physically unable to actually deliver them to Mrs. Preston herself, she gave absolute, positive instructions to Mrs. Sansberg to get the deeds from Mr. Gibson and deliver them to Mrs. Preston, then I charge you that amounted in law to a delivery of the deeds to Mrs. Preston, and your verdict should be for the defendant; unless you also find that Mrs. Ham was of unsound mind. It matters not whether Mrs. Sansberg was instructed to get the deeds and deliver them to Mrs. Preston during Mrs. Ham's life or after her death. In either case such instructions would amount to a delivery of the deeds, provided the instruction was positive, absolute, and subject to no condition other than the death of Mrs. Ham."

The court actually gave the request last above quoted, in the language requested; and actually gave the request first above quoted, modified only by inserting, between the words "happened to her" and the words "if she meant," the words "and that Mrs. Ham renounced dominion over the deeds and did not reserve the right to recall or otherwise control the deeds." And the court did also charge: "It is a legal delivery if it was intended by the grantor that the deed should be delivered to the grantee during

the lifetime of the grantor, and it would not make any difference that the grantee did not obtain physical possession of the deed until after the death of the grantor,—the deed would nevertheless be a legal deed. . . Any facts that manifest the relinquishment of control of the grantor over the deeds and establishing the intention of the grantor to constitute the dominion and control of some one for the grantee is sufficient evidence on the part of the grantee to establish delivery of the deed, so as to vest the title in the grantee." Taking into consideration the recitals in this ground of the motion for new trial, we are of the opinion that the court did not err in giving the charge containing a statement of the contentions of the defendant, as claimed in this ground of the motion. In passing upon this motion the court delivered the following judgment and opinion: "Viewed in connection with the charge of the court on the question of the actual possession of the deeds in question coming into the hands of the grantee after the death of the grantor as effecting a legal delivery thereof by the grantor to the grantee, actual or constructive, it is obvious that the language complained of in the first amended ground of the motion for new trial, to the effect that 'it was intended by Mrs. Ham that she, Mrs. Preston, should go into the custody and possession of these deeds before the death of Mrs. Ham' was not intended to be given by the court, but was an inadvertence; but as this language appears in the approved transcript of the charge, the principle therein stated was error and in direct conflict with the decision of the Supreme Court in this identical case, 156 *Ga.* 236, in which the Supreme Court held that a charge of Judge Searcy who then tried the case, containing similar language to that herein excepted to, 'was calculated to mislead and confuse the jury, and to impress upon their minds the idea that these deeds had to reach the grantee in the lifetime of the grantor.' Under the foregoing cited decision of the Supreme Court, it is now the law of this case that the arrangement by which these deeds were placed in the hands of the cashier of the Flovilla Bank to be kept for the grantor, and, if anything should happen to her, to deliver them to the grantee, did not amount to a delivery to the grantee during the lifetime of the grantor, and the jury was authorized to so find. Therefore the only remaining questions to be decided by the jury in this case are whether or not, after the deeds were left with the cashier of the

bank, the grantor directed her kinswoman, Mrs. Sansberg, to get the deeds from the cashier at once and deliver them to Mrs. Preston; and if she did so, was she at the time of giving these directions of sound mind? The other portions of the charge excepted to are favorable to the defendant, and therefore are unavailing as legal grounds for a new trial. While it is to be regretted, in view of the number of times that this case has already been tried, that the court should have inadvertently committed the error herein acknowledged, a new trial is nevertheless demanded as a matter of law, in order that a jury may determine the remaining issues of fact involved in the case, unincumbered by the erroneous charge. A new trial is therefore awarded unto the defendant solely on this ground and for this purpose."

We are of the opinion that the trial court wrongly construed what was said in the second division of the opinion in *Preston* v. *Ham,* 156 *Ga.* 223. The language in the charge, which this court held in that case was erroneous and "calculated to mislead and confuse the jury and to impress upon their minds the idea that these deeds had to reach the grantee in the lifetime of the grantor," was as follows: "that all instructions given at the hospital or at any other time with reference to the delivery of the deeds by Mrs. Ham should be construed by the jury to mean a delivery during her life, and not a delivery after her death." In this charge the trial court construed certain instructions with reference to the delivery of the deeds; but the language contained in the court's charge on the last trial which the trial judge himself subsequently held to be erroneous is a mere statement of the contentions of the defendant, and the language itself is quite different. That leads us, however, to consider whether or not the court erred in that portion of the charge complained of, in stating the contention of the defendant. This is the language held to be erroneous, which is to be read in connection with the other portions of the excerpt quoted: "it was intended by Mrs. Ham that she, Mrs. Preston, should go into the custody and possession of these deeds before the death of Mrs. Ham." We are of the opinion that the court was authorized to charge this as one of the contentions of the defendant. The defendant introduced a witness, Mrs. Lucy Sansberg, who on direct examination testified as follows: "I am related to Mrs. W. W. Preston. She is my cousin. Mrs. Emma Ham was

also my cousin. She and Mrs. Preston are my mother's sister's children. I was with Mrs. Ham while she was in the hospital in Atlanta. It was on Saturday morning after Cousin Emma was there that Mrs. Preston said, 'I am not physically strong enough to go to Sister. I want you to please go.' I went in the afternoon and stayed until Sunday evening. I was practically with her all the time I was there. I ministered to her the best I could all the time. I wet cloths and put on her head, and did things like that. Mrs. Preston did not go to Atlanta during that time. She was not physically able to make the trip. That was the reason she could not go to Atlanta. I had a conversation with Mrs. Ham with reference to some papers. That was in the Piedmont Hospital in Atlanta. The first time she talked to me about it no one was present but us. That was on Saturday evening. She said, 'Lucy, I know the end is near. I want you to do some things for me. You know I have deeded Bess my house and store in Flovilla. You understand why. These papers are with Mr. Gibson in the Bank of Flovilla. I want you to get them at once and deliver them to Bess, because I want her to have them in her possession.' That was on Saturday before she died on the following Saturday. I came back from the hospital Sunday evening, the next day after she told me that. I did not do what she told me to do, because I was teaching and had the flu, and it was bad, rainy weather. Dr. Wood told me I ought not to leave the house. I didn't understand it was necessary to take the papers right then. I had a conversation with her on Sunday about it. Mrs. Ham said, 'Lucy, don't forget to get the papers from Mr. Gibson and give them to Bess right away.' That was on Sunday evening, and I came home that same evening."

This was all the testimony elicited from the witness by the questions of counsel for the defendant. And where counsel puts up a witness for the sole purpose of proving a fact and does by that witness prove that fact, can it be held that the court was in error in charging that the party introducing the witness contended that the facts stated by the witness were in accordance with the truth of the case, even though counsel might have argued a different state of facts to the jury and might have proffered written requests to charge that were not absolutely in harmony with the facts which they had introduced a witness to establish? Mrs. Sansberg was

put upon the stand to show that she had a conversation with Mrs. Ham when that lady's end was near, and she testified that Mrs. Ham said to her, "You know I have deeded Bess my house and store in Flovilla. . . These papers are with Mr. Gibson in the Bank of Flovilla. I want you to get them at once and deliver them to Bess, because I want her to have them in her possession." And further on she testified: "I had a conversation with her on Sunday about it. Mrs. Ham said, 'Don't forget to get the papers from Mr. Gibson and give them to Bess right away.'" With this testimony of the defendant's own witness, it seems to us that the court was authorized to charge the jury in the language employed in that part of the charge which is excepted to in the first ground of the motion. Moreover, when the defendant herself was on the stand, having been sworn as a witness in her own behalf, and while she was being examined as such, this question was propounded to her by her counsel: "Did Mrs. Ham ever make any statement to you about having made you these deeds to this property?" This question was objected to by plaintiff's counsel, and thereupon defendant's counsel made this statement to the court: "We expect to prove by the witness, in response to that question and questions to follow it, that in October, 1918, Mrs. Ham told Mrs. Preston that she had made these deeds and given them to Mr. Gibson for her, and that was done at about the time of the birthday of Mrs. Preston, and Mrs. Ham told her she had done that as a birthday present. In addition to that, we expect to prove that about the time that Mrs. Ham was going to the hospital the first time, that she told Mrs. Preston that she had made these deeds, that they were with Mr. Gibson for her, and she wanted Mrs. Preston to go and get the deeds from Mr. Gibson." Did the court commit error in construing the proposed testimony of the defendant to the effect that the deeds were with Mr. Gibson for her, and she wanted Mrs. Preston (the defendant) to go and get the deeds from Mr. Gibson, as being tantamount to a contention that "it was intended by Mrs. Ham that she, Mrs. Preston, should go into the custody and possession of these deeds before the death of Mrs. Ham"? If contentions made by plaintiff's counsel in argument and in written requests to charge were in conflict with contentions made elsewhere and in the evidence, then it should have been plainly stated to the court that the contentions as indicated by the

evidence introduced by the defendant were not insisted upon. Consequently we are of the opinion that the court erred in granting a new trial upon this ground.

2. The cross-bill of exceptions assigns error upon the refusal of the court to sustain the remaining grounds of the motion for a new trial. In the second ground of the motion the following charge of the court is excepted to: "Any facts that manifest the relinquishment of control of the grantor over the deeds and establishing the intention of the grantor to constitute the dominion and control of some one for the grantee is sufficient evidence on the part of the grantee to establish delivery of the deed, so as to vest title in the grantee." There is nothing in this portion of the charge that affords ground of exception to the defendant, the plaintiff in error in the cross-bill of exceptions.

3. The extended discussion of the principle ruled in the third headnote, to be found in *Wellborn* v. *Weaver,* supra, renders further discussion here unnecessary.

4-7. The rulings made in the fourth, fifth, sixth, and seventh headnotes require no elaboration. The above rulings cover all of the assignments of error insisted upon in the briefs of counsel.

*Judgment reversed on the main-bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except*

HINES, J., dissenting. 1. The court charged the jury as follows: "Mrs. Preston in her contention seeks to establish that there was a delivery of these deeds, either actual or constructive, and that this delivery of the deeds did not come into her possession until after the death of Mrs. Ham, but that they were intended by Mrs. Ham, the maker of the deeds, to be conveyed to her, and that the delivery of the deeds was not limited by the grantor, Mrs. Ham, after the death of Mrs. Ham, but that she had relinquished the possession or control and dominion over these deeds during her lifetime, and that it was intended by Mrs. Ham that she, Mrs. Preston, should go into the custody and possession of these deeds before the death of Mrs. Ham." The defendant excepted to this charge, upon the ground that it erroneously stated one of her contentions, and failed to state one of the contentions which she made. She contends that this misstatement of her contention, when taken in connection with the substantive law given to the jury by the court, was calculated to mislead and confuse the jury and impair

the effect of what the court had charged the jury. She asserts that she did not contend "that it was intended by Mrs. Ham that she, Mrs. Preston, should go into the custody and possession of these deeds before the death of Mrs. Ham." I think this contention is well taken. The language just quoted tended to confuse and mislead the jury. From this instruction the jury might have inferred that, if it was the intention of the grantor that the deed should go into the custody and possession of the grantee before the death of the grantor, there was no sufficient delivery of the deed if it did not reach the custody and possession of the grantee before the death of the grantor. It is true the defendant introduced evidence tending to show that Mrs. Ham directed the delivery of this deed to the grantee during her lifetime. She further requested an appropriate instruction from the court upon this view of the case. But the defendant, neither in her request to charge nor by the evidence introduced by her, nor by the statement of her counsel to the court of what he expected to prove by the defendant, when offered as a witness in her own behalf, upon this subject, made the contention which the court put into her mouth in this instruction. In other words, the defendant contended that the grantor intended a delivery, either during her life or after her death, and did not confine the surrender of the possession and custody of this deed to the period of her life. This instruction had the effect of misleading the jury as to the true contention of the defendant, and, in an exceedingly close case like this, required the grant of a new trial. "An erroneous statement of the contentions of a party upon a material point in the case, which may have confused the jury in regard to the question involved, is ground for the granting of a new trial." *Wilson* v. *Wilson*, 130 *Ga.* 677 (61 S. E. 530). Where the facts are closely contested, the charge should state the theory of each side fully and fairly. *Freeman* v. *Hamilton*, 74 *Ga.* 317. A party "can complain, without any request having been made at all, of the fact that the court has not presented with reasonable fullness and clearness (if this be true) a material and substantial contention made by him." *Whelchel* v. *Gainesville etc. Railway Co.*, 116 *Ga.* 431 (42 S. E. 776). Where the plaintiff claimed under two distinct deeds, and the judge fairly and fully submitted to the jury his contentions under one of them, but did not submit to them his

claims under the other, a new trial was granted. *Sackett* v. *Stone,* 115 *Ga.* 466 (41 S. E. 564). "A charge of the court excluding from consideration by the jury contentions of a party to the cause on trial as to material issues, in support of which evidence has been introduced, is ground for the grant of a new trial." *Savannah Guano Co.* v. *Christian,* 159 *Ga.* 600 (126 S. E. 376).

When this case was here before, this court held: "Where after the deposit of these deeds with the cashier of the bank the grantor directed her kinswoman to get them at once and deliver them to the grantee, such direction amounted to a verbal delivery to the grantee, although they may not have reached the hands of the grantee until after the death of the grantor; provided at the time of giving such directions the grantor had strength of mind sufficient to fully and clearly understand the nature of this act." *Preston* v. *Ham,* 156 *Ga.* 223. The trial judge, in his order granting a new trial, did not misapprehend or misapply the ruling made by this court when the case was here before, which is set out in the second division of the opinion then rendered. The statement of the contention of the defendant, set out in the instruction complained of, clearly tended to confuse and mislead the jury, and to lead them to believe that the plaintiff contended that the intention of the grantor was that this deed should reach the custody and possession of the grantee in the life of the grantor, to make the delivery effectual.

2. The court was duly requested to charge the jury as follows: "I charge you that it does not require a high degree of mental capacity to make a deed of gift, or to deliver a deed of gift, or to direct or request the delivery of a deed of gift. Any one who has strength of mind and reason equal to a full and clear understanding of the nature and consequences of his or her acts in doing so is to be considered sane for that purpose and capable in law of doing so." The court refused this request. The principle embodied therein is a correct statement of law, and was accurately adjusted under the evidence to a vital issue in the case. It follows that the failure to give it requires the grant of a new trial, unless it was covered by the general charge. The contention is that it was so covered, by reason of the following instruction to the jury: "I charge you that it requires less mental capacity to make a gift than to make a sale. I charge you that it does not re-

quire a high degree of mental capacity to make a deed of gift or to deliver a deed of gift. Any one who has strength of mind and reason equal to a full and clear understanding of the nature and consequences of his or her acts in doing so is to be considered sane for that purpose and capable in law of doing so." The issue to which the principle embraced in this request is applicable was whether Mrs. Ham had sufficient mental capacity to give to her kinswoman, while confined in the hospital in Atlanta, directions as to the delivery of this deed to the grantee. There was no question about her possession of full mental capacity to execute this deed, or deliver this deed, at the time it was executed. One of the vital issues in the case was whether she possessed such mental capacity at the time of giving these instructions to her kinswoman about the delivery of her deed. The charge as given wholly omitted to make any reference to her mental capacity at the time she gave these instructions. The request which was refused bore directly upon the mental capacity of the grantor at the time she gave these instructions. The request went beyond the instruction given. It applied directly to the vital point in the issue to which it refers. A specific charge which is legal and which is adjusted to a distinct matter in issue, and which may materially aid the jury, should be given as requested, although in principle and in more general and abstract terms it may be covered by other instructions given by the court to the jury. *Metropolitan Street Railroad Co.* v. *Johnson,* 90 *Ga.* 500 (5) (16 S. E. 49). In a close and doubtful case, it is error for the judge to refuse to give to the jury, upon appropriate written request submitted in due time, a charge applying to the facts, as shown by the evidence of the party making the request, the law applicable thereto; and this is true although the judge in his charge stated the abstract principle of law applicable to those facts. *Belt* v. *State,* 103 *Ga.* 12 (4) (29 S. E. 451) ; *Snowden* v. *Waterman,* 105 *Ga.* 384 (5) (31 S. E. 110) ; *Roberts* v. *State,* 114 *Ga.* 450 (40 S. E. 297). Under the facts of this case, the plaintiff was entitled to a specific instruction to the jury that it did not require a high degree of mental capacity in the maker to direct or request the delivery of a deed of gift.

3. In view of the evidence in this case, the court did not err in granting a new trial, for the two reasons above given. The evi-

dence almost demands a finding for the plaintiff upon the real issues in the case. In this situation it is clear that the court erred in his instruction to the jury with reference to the contention of the plaintiff, which is dealt with above; and the plaintiff was entitled to have given to the jury the instruction embraced in her written request hereinbefore dealt with.